UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.: 17-CV-24530-UU

NANCY BODAN,

    Plaintiff,

v.

CG RYC, LLC, CG MIAMI RIVER LLC,
FOOD AND LEVERAGE, LLC, STEPHANE DUPOUX, and
MEYER CHETRIT,

    Defendants.
_____/

## [PROPOSED] AMENDED COMPLAINT

Plaintiff Nancy Bodan ("Plaintiff"), a former employee of River Yacht Club, files this Complaint against River Yacht Club's owner, CG RYC, LLC, its members CG Miami River LLC, and Food and Leverage, LLC, and Stephane Dupoux and Meyer Chetrit (collectively, "Defendants"), seeking damages resulting from the Defendants' violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. (the "FLSA").

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Nancy Bodan is a resident of Miami-Dade County, Florida, is over the age of 18, is otherwise *sui juris*, and is within the jurisdiction of this Court. The Plaintiff was a covered employee for purposes of the FLSA.

2. Defendant CG RYC LLC ("CG RYC"), is a Delaware limited liability company having its principal place of business located at 401 SW 3rd Avenue, Miami, FL 33131. CG RYC has transacted business and engaged in tortious and fraudulent conduct, by affirmative acts or omissions, in the State of Florida whereby it reasonably anticipated that injury would result and

has, in fact, resulted upon persons within the State of Florida. As such, this Court has personal jurisdiction over CG RYC. CG RYC owns and operates River Yacht Club located at 401 SW 3rd Avenue, Miami, FL 33130.

3. Defendant CG Miami River LLC ("CG Miami River") is a Delaware limited liability company having its principal place of business located at 2915 Biscayne Boulevard, Suite 300, Miami, FL 33137. CG Miami River has transacted business and engaged in tortious and fraudulent conduct, by affirmative acts or omissions, in the State of Florida whereby it reasonably anticipated that injury would result and has, in fact, resulted upon persons within the State of Florida. As such, this Court has personal jurisdiction over CG Miami River. CG Miami River is a Member of CG RYC, which owns and operates River Yacht Club.

4. Defendant Food and Leverage, LLC ("Food and Leverage"), is a Florida limited liability company having its principal place of business located at 4464 Prairie Avenue, Miami Beach, FL, and is within the personal jurisdiction of this Court. Food and Leverage is a Member of CG RYC, which owns and operates River Yacht Club.

5. Defendant Stephane Dupoux ("Dupoux") is a resident of Miami-Dade County, Florida, is over the age of 18, is otherwise *sui juris*, and is within the jurisdiction of this Court. Dupoux is the Managing Member of Food and Leverage, which is a member of the entity that owns the restaurant River Yacht Club that employed the Plaintiff. Dupoux acted directly or indirectly in the interest of CG RYC in relation to the Plaintiff by making day-to-day management decisions for River Yacht Club including, without limitation, making hiring decisions, controlling the compensation and scheduling of the employees, and the delineation of day-to-day responsibilities of CG RYC. As a result, Dupoux is an "employer" as defined in 29 U.S.C. § 203(d).

6. Defendant Meyer Chetrit ("Chetrit") is a resident of New York, is over the age of 18, and is otherwise *sui juris*. Chetrit is subject to the personal jurisdiction of this Court based upon his acts and omissions in Florida. Chetrit is a Manager of CG Miami River, which is a member of the entity that owns the restaurant River Yacht Club that employed the Plaintiff. Chetrit acted directly or indirectly in the interest of CG RYC in relation to the Plaintiff by making day-to-day management decisions for River Yacht Club including, without limitation, making hiring decisions, controlling the compensation and scheduling of the employees, and the delineation of day-to-day responsibilities of CG RYC. As a result, Chetrit is an "employer" as defined in 29 U.S.C. § 203(d).

7. Pursuant to 29 U.S.C. § 216, the Court has jurisdiction over the Plaintiff's FLSA claims, 29 U.S.C. § 201, *et seq*.

8. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), because the acts and omissions giving rise to the Plaintiff's claims occurred or originated within this District.

## GENERAL ALLEGATIONS

9. River Yacht Club opened on the Miami River in downtown Miami, Florida at 401 SW 3rd Avenue, Miami, FL 33130 in the end of 2016.

10. Initially, River Yacht Club entered into an employment relationship with the Plaintiff, who was employed as a server, and who would qualify, and was supposed to be compensated as a "Tipped Employee" under the FLSA.

11. As a Tipped Employee, River Yacht Club agreed to pay the Plaintiff an hourly wage of $5.50.

12. River Yacht Club required the Plaintiff to participate in a tip pool and to share the tips and gratuities that River Yacht Club collected from its patrons as service charges.

13. In or about the end of June 2017, River Yacht Club held a meeting and informed the Plaintiff that her hourly wages would be retroactively reduced from $5.50 an hour to $3.50 an hour for the three-week period that preceded the meeting.

14. River Yacht Club, unilaterally and without advanced notice to the Plaintiff, modified the terms of the Plaintiff's employment without the Plaintiff's consent.

15. This pay decrease was applied retroactively and appeared on the paycheck received by the Plaintiff for the prior pay period without the Plaintiff's knowledge or consent.

### A.   FLSA Allegations

16. Defendants CG Miami River and Food and Leverage are members of Defendant CG RYC, which owns River Yacht Club.

17. Defendant Stephane Dupoux is the Managing Member of Food and Leverage. Dupoux acted directly or indirectly in the interest of CG RYC, in relation to the Plaintiff, by making day-to-day management decisions for River Yacht Club including, without limitation, making hiring decisions, controlling the compensation and scheduling of the employees, and the delineation of day-to-day responsibilities of CG RYC.

18. Defendant Meyer Chetrit is a Manager of CG Miami. Chetrit acted directly or indirectly in the interest of CG RYC, in relation to the Plaintiff, by controlling the compensation, employee scheduling, and delineation of day-to-day responsibilities of CG RYC.

19. During all material times, pursuant to the FLSA, Defendant CG RYC was an "enterprise engaged in commerce," as defined in 29 U.S.C. § 203(s), and had an annual gross volume of sales of not less than $500,000.

20. During all material times, the Defendants were "employers," as defined by 29 U.S.C. § 203(d).

21.     The Plaintiff has been employed by River Yacht Club since February 2017 and is still currently an employee of River Yacht Club. At all times during her employment, the Plaintiff has been a busser and a "tipped employee," as defined in 29 U.S.C. § 203(t). The FLSA Relevant Time Period is from February 6, 2017 to present ("Relevant Time Period").

22.     The applicable Florida minimum wage was $8.10 per hour in 2017.

23.     Throughout her employment, the Plaintiff often worked in excess of 40 hours per week.

24.     Under the FLSA, if an employer satisfies the requirements set forth in 29 U.S.C. § 203(m), the employer may apply a portion of a tipped employee's tips (the "tip credit") to satisfy its obligation to pay its employees minimum wage. The tip credit may be applied to both regular and overtime hours worked.

**B.     The Invalid Tip Pool**

25.     River Yacht Club mandated and maintained an invalid tip pool that violated the minimum wage and overtime requirements of the FLSA.

26.     River Yacht Club represented on its menu, receipts, and signs in the restaurant that it would charge its patrons an 18% gratuity that would then be distributed among the tipped employees.

27.     Contrary to its representations to its patrons, River Yacht Club treated the 18% gratuity as a service charge, retained a portion of the gratuities that were collected from its patrons, distributed a portion of the gratuities to the restaurant's management and non-tipped employees, and mandated that the Plaintiff and other tipped employees share the balance of the tip pool.

28.     Specifically, River Yacht Club would receive 3% of the total amount of the tip pool.

29. River Yacht Club's management would receive 10% of the total amount of the tip pool.

30. The remaining 87% of the total amount of the tip pool for each night would then be split among the servers, bartenders, runners, barbacks, bussers, and hostesses.

31. For employees who worked shifts of 6 hours or more, they would receive the following number of points in the tip pool:

   a. Servers: 9 points;

   b. Bartenders: 8 points;

   c. Runners: 6 points;

   d. Barbacks: 5 points;

   e. Bussers: 5 points; and

   f. Hostesses: 1 point.

32. River Yacht Club had exclusive access and control over the financial information, employees' schedules, and total number of points that were involved in each shift and refused to grant the Plaintiff access to the information, thereby depriving her of a meaningful opportunity to ascertain whether the tip pool was properly and accurately maintained.

33. Nor did the Plaintiff know the total number of points in the tip pool at any given time.

34. The Plaintiff was able to view her share of the tip pool through an application on her phone, named GratShare.

35. The Defendants prevented the Plaintiff from obtaining, via the GratShare application, any information concerning the amount of tips owed to the Plaintiff for each shift that she worked for River Yacht Club.

36. Not only did the GratShare application, whose data was controlled by River Yacht Club, not provide complete information to the Plaintiff concerning her share of the tip pool, but River Yacht Club often manipulated the data that was inputted into GratShare, which would either reduce the Plaintiff's share of the tip pool or increase the share that River Yacht Club received from the tip pool.

37. Although River Yacht Club informed the Plaintiff that it would take 3% of the total amount of the tip pool, it would often receive anywhere from as much as 24% to 33.5%.

38. In addition to the invalid tip pool, River Yacht Club required the Plaintiff to share any tips that were charged to River Yacht Club's patrons' credit cards (in excess of the 18% gratuity) with River Yacht Club's bussers, bar backs, and food runners.

39. In or around February 2017, River Yacht Club stopped using the GratShare application.

40. From February 2017 going forward, River Yacht Club used an Excel spreadsheet to maintain the invalid tip pool.

41. As with GratShare, based on the spreadsheet, 3% of the total amount of the tip pool would go to River Yacht Club, 10% of the total amount of the tip pool would go to the managers, and the remaining 87% of the total amount of the tip pool would be split among the "front-of-house" employees.

42. However, just as when River Yacht Club was using GratShare, the Defendants refused to grant the Plaintiff access to any information concerning the tip pool or the tip share that each employee received from the tip pool.

43. In or about July 2017, the Plaintiff no longer received any payment for the tips received.

44.     As a result of the above violations, the Defendants did not satisfy the tip credit requirements of 29 U.S.C. § 203(m) during the Relevant Time Period owed to the Plaintiff and thus, cannot apply her tip credit towards the Defendants' minimum and overtime wage obligations under the FLSA.

45.     As such, the Defendants must pay the Plaintiff the short fall resulting from the invalid tip credit that was applied toward the minimum wage that the Plaintiff should have received for each regular hour worked and the overtime wage for each overtime hour worked.

46.     The Defendants willfully violated the FLSA by maintaining the invalid tip pool, making inconsistent representations to their patrons and employees regarding the nature of the 18% gratuity that was being charged to the patrons, depriving the Plaintiff of access to the information and data that was used to maintain the tip pool, manipulating the information that was put in the tip pool to increase River Yacht Club's share of the tip pool and/or reduce the Plaintiff's share of the tip pool, and retroactively reducing the Plaintiff's hourly wage without advanced notice to the Plaintiff and without her consent.

47.     To add insult to injury, after the Defendants unilaterally reduced the Plaintiff's hourly wage from $5.50 to $3.50, they stopped paying the Plaintiff her share of the tip pool and instead retained and used the tip pool for their own pecuniary interest.

48.     The Plaintiff has satisfied all conditions precedent prior to filing this lawsuit.

49.     The Plaintiff has retained the undersigned counsel and is obligated to pay the undersigned counsel's law firm its reasonable attorneys' fees and costs that were incurred in connection with bringing and prosecuting this action.

C.     **The Initial Estimate of Amount of Unpaid Wages Under the Federal Minimum Wage Claim**

50.     The Plaintiff has made the following initial calculation of the unpaid wages under her Federal Minimum Wage Claim. This calculation does not include an estimate of the amount of unpaid overtime wages, unpaid tips, or any damages stemming from the Plaintiff's state law claims.

| Description | Amount |
|---|---|
| Federal Minimum Wage in 2017 | $8.10 |
|  |  |
| Hourly Wage paid from 2/6/2017 to 5/28/2017 | $5.50 |
| Discrepancy between Federal Minimum Wage and Hourly Wage paid from 2/6/2017 to 5/28/2017 | $2.60 |
| Hours worked from 2/6/2017 to 5/28/2017 | $318.49 |
| Amount owed from 2/6/2017 to 5/28/2017 | $828.07 |
|  |  |
| Hourly Wage paid from 5/29/2017 to 7/23/2017 | $3.50 |
| Discrepancy between Federal Minimum Wage and Hourly Wage paid after 5/29/2017 | $4.60 |
| Hours worked from 5/29/2017 to 7/23/2017 | 143.91 |
| Amount owed from 5/29/2017 to 7/23/2017 | $661.99 |
|  |  |
| Total owed for discrepancy between Federal Minimum Wage and Hourly Wage paid | $1,490.06 |

## CAUSES OF ACTION

### Count I
**Violation of the FLSA, 29 U.S.C. § 201, *et seq.*
(Failure to Pay Minimum Wage)**

51.     The Plaintiff incorporates each and every allegation set forth in Paragraphs 1 through 50, *supra*, as if fully set forth herein.

52.     The Defendants willfully and intentionally forced the Plaintiff to participate in an invalid tip pool in which management and River Yacht Club participated.

53. The Defendants did not provide the Plaintiff with the requisite notice for instituting the tip credit under the FLSA.

54. By forcing the Plaintiff to share tips with management and River Yacht Club, and failing to provide the Plaintiff with the required notice under the FLSA, the Defendants cannot claim the tip credit. Consequently, the Defendants owe the Plaintiff the full minimum wage for each hour worked up to 40 hours in a week.

55. As a direct and proximate result of the Defendants' violation of the FLSA, the Plaintiff has suffered damages resulting from the improper tip credit that the Defendants applied to the Plaintiff's minimum wage compensation during the Relevant Time Period.

56. In addition, the Plaintiff is entitled to receive her full share of the tips that River Yacht Club collected from its patrons, via the 18% gratuity, as well as any additional tips that the patrons voluntarily included to their respective bills.

WHEREFORE, Plaintiff Nancy Bodan, requests that the Court enter judgment finding CY RYC, CG Miami River, Food and Leverage, Stephane Dupoux, and Meyer Chetrit jointly and severally liable for violation of the FLSA, 29 U.S.C. § 201, *et seq.*, award the Plaintiff damages, costs, interest, attorneys' fees and costs, and grant such other relief a the Court deems just and proper.

## Count II
**Violation of the FLSA, 29 U.S.C. § 201, *et seq.***
**(Failure to Pay Overtime Wage Compensation)**

57. The Plaintiff incorporates each and every allegation set forth in Paragraphs 1 through 50, *supra*, as if fully set forth herein.

58. The Defendants willfully and intentionally forced the Plaintiff to participate in an invalid tip pool in which management and River Yacht Club participated.

59. The Defendants did not provide the Plaintiff with the requisite notice for instituting the tip credit under the FLSA.

60. By forcing the Plaintiff to share tips with management and River Yacht Club, and failing to provide the Plaintiff with the required notice under the FLSA, the Defendants cannot claim the tip credit. Consequently, the Defendants owe the Plaintiff the overtime wage for each hour worked in excess of 40 hours in a week.

61. As a direct and proximate result of the Defendants' violation of the FLSA, the Plaintiff has suffered damages resulting from the improper tip credit that the Defendants applied to the Plaintiff's overtime compensation during the Relevant Time Period.

62. In addition, the Plaintiff is entitled to receive her full share of the tips that River Yacht Club collected from its patrons, via the 18% gratuity, as well as any additional tips that the patrons voluntarily included to their respective bills.

WHEREFORE, Plaintiff Nancy Bodan, requests that the Court enter judgment finding CY RYC, Stephane Dupoux, CG Miami River, and Food and Leverage jointly and severally liable for violation of the FLSA, 29 U.S.C. § 201, *et seq.*, award the Plaintiff damages, costs, interest, attorneys' fees and costs, and grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiff respectfully demands a trial by jury of all issues so triable.

Dated: January 12, 2018.

Respectfully submitted,

**ZARCO EINHORN SALKOWSKI & BRITO, P.A.**
Miami Tower
100 S.E. 2nd Street, 27th Floor
Miami, Florida 33131
Telephone: (305) 374-5418
Facsimile: (305) 374-5428
By: /s/ Robert Zarco
    **ROBERT ZARCO (FBN 502138)**
    E-mail: rzarco@zarcolaw.com
    **BESHOY RIZK (FBN 93808)**
    E-mail: brizk@zarcolaw.com
    **MARGARET T. LAI (FBN 0074395)**
    E-mail: mlai@zarcolaw.com
    Secondary E-mail: khernandez@zarcolaw.com
    Secondary E-mail: eservice@zarcolaw.com