UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 17-24530-CIV-UNGARO/O'SULLIVAN

NANCY BODAN,

    Plaintiff,

v.

CG RYC, LLC, CG MIAMI RIVER LLC,
FOOD AND LEVERAGE, LLC,
STEPHANE DUPOUX, and
MEYER CHETRIT,

    Defendants.
                                         /

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court on the defendants' Motion to Disqualify Plaintiff's Counsel (DE# 24, 1/30/18). This matter was referred to United States Magistrate Judge John J. O'Sullivan by the Honorable Ursula Ungaro, United States District Court Judge for the Southern District of Florida pursuant to 28 U.S.C. § 636(b). (DE# 33, 2/5/18)  Having reviewed the applicable filings and law, the undersigned respectfully **RECOMMENDS** that the defendants' Motion to Disqualify Plaintiff's Counsel (DE# 24, 1/30/18) be GRANTED in accordance with the following Report and Recommendation.

## BACKGROUND

Roberto Zarco, Esq., Beshoy Rizk and the law firm of Zarco Einhorn Sakowski & Brito, P.A. (The "Zarco firm") previously represented the defendant, Stephane Dupoux ("Mr. Dupoux") in a substantially related case in this District: *Jorge Gutierrez, et al., v. Seasalt and Pepper, LLC, et al.,* 14-22852-CV-Ungaro (S.D. Fla. 2014) (the "Gutierrez

Case").

In the Gutierrez Case, the plaintiffs, who were alleged to be tipped employees but who were paid pursuant to the 207(i) retail sales exemption, sued the restaurant-employer and, among others, Mr. Dupoux, for alleged violations of the FLSA due to an allegedly improper "tip pool." See Motion, Ex. 1 (Gutierrez Complaint) (DE# 24-1, 1/20/18).

The Gutierrez plaintiffs alleged that "[t]hroughout Plaintiff's employment, Defendants characterized the 18% charge as a 'tip' so that Defendants could attempt to avoid complying with Federal and state laws including, but not limited to, the failure to pay Federal payroll taxes and state unemployment taxes. Despite characterizing the 18% as a 'tip,' in an attempt to pay less federal and state taxes, Defendants refused to pay Plaintiff the full 18% gratuity to which he was entitled under 29 C.F.R. [§] 531.52." Id. at ¶¶ 51-52.

In a Motion to Dismiss Amended Complaint in the *Gutierrez* case, the Zarco firm argued that the employer had a valid 207(i) exemption, as the defendants maintain in the present case. The court agreed with the Zarco Firm's argument that the employer in the *Gutierrez* case had a valid 207(i) exemption and granted the defendants' motion to dismiss the amended complaint. See Motion, Ex. 3, Order dated 12/9/14 in *Gutierrez* at 5-6 (DE# 24-3, 1/20/18).

The Zarco Firm successfully defended Mr. Dupoux and others in *Gutierrez*, which was an FLSA case that involved an alleged "tip pool" which was actually a service charge. In the present action, the Zarco Firm represents the plaintiff against his

former client, Mr. Dupoux.

In an affidavit filed in support of the motion to disqualify the Zarco Firm, Mr. Dupoux avers that the Zarco Firm counseled him regarding the use of a 207(i) exemption for paying front of the house employees, which is at the heart of the present action, and Mr. Dupoux utilized the Zarco Firm's advice and has been operating a 207(i) exemption for the past few years at River Yacht Club.  See Declaration of Stephane Dupoux Pursuant to 28 U.S.C. § 1746(1) ("Dupoux Declaration) at ¶¶ 7-8, Motion, Ex. 4 (DE# 32-1, 2/5/18).  Mr. Dupoux avers that while he had an ownership interest in Seasalt and Pepper restaurant, which was a defendant in the *Gutierrez* case, "the Zarco firm provided [him] with legal advice regarding utilization of the 207(i) exemption for use at Seasalt and Pepper."  Dupoux Declaration at ¶ 6.  Mr. Dupoux further avers that he "was unaware of the existence of the 207(i) or the manner in which a 207(i) exemption operates prior to the Zarco Firm providing [him] with this legal advice."  Id. at ¶ 7.

In the Declaration of Beshoy Rizk, Esq. ("Rizk Declaration")(Ex. D at ¶¶ 6-8; DE# 31-4, 2/2/18) (Sealed), which was filed in support of the plaintiff's opposition to the motion to disqualify, Mr. Rizk avers that the Zarco firm did not learn any facts about the employment dispute from Dupoux and as a result none were utilized in the Zarco firm's filing of the Motion to Set Aside the Clerk's Default and Motion to Dismiss filed on Mr. Dupoux's behalf.  Mr. Rizk further avers that Mr. Dupoux took an inactive role in the *Gutierrez* case.  Additionally, Mr. Rizk avers that "[a]t no time did [the Zarco firm] provide Dupoux with any legal advice regarding the utilization under the Fair Labor Standards Act for use at any restaurants."  Rizk Declaration, Ex. D at ¶ 6 (DE# 31-4,

2/2/18) (Sealed).  Finally, Mr. Rizk avers that "[n]either [he] nor any of the attorneys at [the Zarco firm] had any discussions with Dupoux regarding River Yacht Club or any employment-related arrangements or issues that would implicate the requirements of the FLSA or any other applicable state or federal law." Id. at ¶ 10 (Sealed). The *Gutierrez* case was dismissed in March 2015, approximately one year before Mr. Dupoux and the other defendants opened the restaurant River Yacht Club. Id. at ¶ 11 (Sealed).

On or about November 3, 2017, the plaintiffs filed a civil action against the defendants in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida (hereinafter "state court action").  The complaint included five claims: two claims under the Fair Labor Standards Act ("FLSA"), and three claims under state law for breach of contract, accounting, and unjust enrichment.

The defendants were served with the state court action on November 30, 2017. On December 14, 2017, the defendants removed the state court action to this Court.

The Court ordered that the various plaintiffs be severed and dismissed without prejudice the claims of all of the plaintiffs except the first named plaintiff, Nancy Bodan. (DE# 8, 12/27/18).  The Court *sua sponte* declined to exercise supplemental jurisdiction over the plaintiff's state law claims and dismissed without prejudice Counts III, IV and V of the plaintiff's Complaint. (DE# 17, 1/12/18).

On January 12, 2018, the plaintiff asked the Court for permission to file an amended complaint, which the Court granted (DE# 22). On January 16, 2018, the plaintiff filed an Amended Complaint, which alleges violations of minimum wage and overtime wage compensation under the FLSA.  (DE# 23, 1/16/18).  On March 3, 2018,

4

the Court granted the defendants' Motion to Dismiss for Failure to State a Claim (DE# 25, 1/20/18).  Order (DE# 48, 3/2/18).

On January 30, 2018, the defendants filed their Motion to Disqualify Plaintiff's Counsel (DE# 24, 1/30/18).  The plaintiff filed under seal her Response in Opposition to the defendants' Motion to Disqualify Plaintiff's Counsel.  (DE# 31; 2/2/18) (Sealed). The Court granted the Plaintiff's Motion for Leave to File Documents under Seal.  (DE# 34, 2/8/18). The defendants filed their reply on February 5, 2018.  (DE# 32, 2/5/18).  The motion to disqualify is ripe for disposition.

## **ANALYSIS**

### I.      **Legal Standard for Disqualification**

"Motions to disqualify are governed by two sources of authority. First, attorneys are bound by the local rules of the court in which they appear... Second, federal common law also governs attorneys' professional conduct because motions to disqualify are substantive motions affecting the rights of parties." Hermann v. GutterGuard, Inc., 199 Fed. App'x 745, 752 (11th Cir. 2006) (citations omitted); see S.D. Fla. Local Rule 11.1(c) ("The standards of professional conduct of members of the Bar of this Court shall include the current Rules Regulating The Florida Bar.").  When disqualification is based on an allegation of an ethical violation, "the court may not simply rely on a general inherent power to admit or suspend attorneys without a limit on such power."  Id. Rather, "the court must clearly identify the Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule." Id. (citations omitted).

Florida Bar Rule 4-1.9 applies and provides in pertinent part:
A lawyer who has formerly represented a client in a matter must not afterwards:
   (a) represent another person in the same or a substantially related matter

>  in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent.
>  (b) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or (c) reveal information relating to the representation except as these rules would permit or require with respect to a client.

FL Bar Rule 4-1.9.  "Rule 4-1.9 is designed to protect client confidentiality and is 'aimed at the problem of attorneys "switching sides."'" Estright v. Bay Point Improvement Ass'n, Inc., 921 So. 2d 810, 811 (2006) (citation omitted).  "[A] conflict exists if either the former and current representations are substantially related or the attorney actually learned information in the prior representation that is relevant to the current representation." U.S. ex rel. Bumbury v. Med-Care Diabetic & Medical Supplies, Inc., 101 F. Supp. 3d 1268, 1274 (S.D. Fla. 2015) (quoting Freund v. Butterworth, 165 F.3d 839, 859 (11th Cir. 1999) (citations omitted)).

"Once the existence of an attorney-client relationship is established, an 'irrefutable presumption' arises that confidences were disclosed during the course of the relationship." In re Skyway Commc'ns Holding Corp., 415 B.R. 859, 867 (Bankr. M.D. Fla. 2009) (quoting In re Weinhold, 380 B.R. 848, 852 (Bankr. M.D. Fla. 2007) (citing State Farm Mut. Auto. Ins. Co. v. K.A.W., 575 So. 2d 630, 633 (Fla. 1991)). Under Florida law, "'[u]pon a showing there is an attorney-client relationship, there is a presumption there was a confidential relationship and confidential information was transferred to all members of a firm by the client.'" Weinhold, 380 B.R. at 852 (quoting In re Outdoor Products Corp., 183 B.R. 645, 649 (Bankr. M.D. Fla. 1995)). "'The presumption acknowledges the difficulty of proving that confidential information useful to the attorney's current client was given to the attorney. It also protects the client by not requiring disclosure of confidences previously given to the attorney.'" Weinhold, 380 B.R. at 852 (quoting State Farm, 575 So. 2d at 634).

Florida Bar Rule 4-1.6(a) provides: "Consent Required to Reveal Information. A lawyer must not reveal information relating to the representation of a client except as stated in subdivisions (b), (c), and (d) unless the client gives informed consent."

Florida Bar Rule 4-1.8(b) provides: "Using Information to Disadvantage of Client. A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these rules."

Florida Bar Rule 4-1.7(a) provides in pertinent part: "a lawyer must not represent a client if: ... there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."

Florida Bar Rule 4-1.10(a) provides for the imputed disqualification of all lawyers in a firm and states that "[w]hile lawyers are associated in a firm, none of them may knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by rule 4-1.7 or 4-1.9 except as provided elsewhere in this rule, or unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm."

The defendants seek disqualification of the attorneys in the Zarco firm on the grounds that this action involves allegations of an FLSA violation involving an alleged "tip credit" and the use of the 207(i) exemption which is the issue that existed in the substantially related matter that was the subject of Mr. Dupoux's former representation by the Zarco firm and (2) the Zarco firm counseled Mr. Dupoux on the use of the 207(i) exemption and is now adverse to its former client on the same issue.

The plaintiff opposes the defendants' motion to disqualify on the grounds that: 1) the *Gutierrez* litigation is not substantially similar to the present action; and 2) that the

defendants waived the right to seek disqualification due to a four-month delay between notice of the Zarco Firm's representation of the plaintiff in this matter and filing the motion to disqualify.  See Opposition at 1 (Sealed).  Although the Zarco firm attempts to downplay its representation of Mr. Dupoux in the Gutierrez action, the Zarco firm cannot deny that Mr. Dupoux is a former client of the firm and the Zarco firm filed a motion to dismiss based on the 207(i) exemption.[1]

The burden of proof is on the party seeking disqualification of counsel.  In re Bellsouth, 334 F.3d 941, 961 (11th Cir. 2003) (citation omitted).

**II.     No Waiver**

The defendants filed their Motion to Disqualify Plaintiff's Counsel (DE# 24) on January 30, 2018, which was less than three months after the plaintiff filed the initial Complaint on November 3, 2017.  The defendants were served with process between November 22, 2017 and November 30, 2017.

The plaintiff argues that the defendants learned of the Zarco firm's representation of plaintiff on September 28, 2017, when the Zarco firm sent the defendants a letter concerning the River Yacht Club's alleged violation of the FLSA and Florida minimum wage. The plaintiff argues further than the defendants filed numerous documents including the notice of removal and two motions to dismiss, before they filed their motion to disqualify.  At worst, the defendants waited approximately four months to file their motion to disqualify if the September 28, 2017 letter provides notice of the Zarco firm's conflict.

---

[1] In the Opposition, the Zarco Firm explains that "[i]t was not until September 12. 2014 that [the Zarco Firm] made an appearance on behalf of Mr. Dupoux in the Gutierrez Lawsuit by filing a Motion to Set Aside the Clerk's Default and Motion to Dismiss. [The Zarco Firm's] represenation of Dupoux was required due to the indemnification clause in the Settlement Agreement... [The Zarco Firm] did not learn any facts about the employment dispute from Dupoux and as a result none were utilized in the [Zarco Firm's] filing of the Motion to Set Aside the Clerk's Default and Motion to Dismiss."  Opposition at 3 (citing Beshoy Rizk Affidavit).

"'A motion to disqualify should be made with reasonable promptness after the party discovers the facts which lead to the motion.'" Case v. City of Miami, 765 So. 2d 259, 2601-61 (Fla. 3d DCA 2000) (quoting Transmark, U.S.A., Inc. v. State of Florida, Dept. of Ins., 631 So. 2d 1112, 1116 (Fla. 1st DCA) (ten-months delay in seeking disqualification deemed waiver), review denied, 639 So. 2d 983) (Fla. 1994); and citing Balda v. Sorchych, 616 So.2d 1114, 1116 (Fla. 5th DCA 1993) (same; three-years delay); Cox v. American Cast Iron Pipe Co., 847 F.2d 725 (11th Cir. 1988)(same; nineteen months delay); (other citations omitted).  The plaintiff has not cited any case that holds that a three or four-month delay constitutes waiver of the right to seek disqualification. In Case, the City "waived its right to seek disqualification of retirees' counsel by virtue of its *seven-years delay* before seeking to remove counsel from the case." Case, 765 So. 2d at 260 (emphasis in original).  The plaintiff's reliance on Transmark is misplaced.  In Transmark, the movant waited more than ten months after discovery of a potential conflict and after the conflicted attorneys had incurred substantial fees for work on the matter before filing its motion for disqualification.

Unlike the cases cited by the plaintiff, the defendants in the present case filed their motion within less than three months of service of process and approximately four months after the Zarco firm sent a letter notifying them of the violations that form the basis of the complaint. See Herrmann v. GutterGuard, Inc., 199 Fed. App'x 745, 747 (11th Cir. 2006) (affirming the district court's granting a motion to disqualify that was filed approximately three months after the plaintiffs filed their collective action). The undersigned finds that the motion to disqualify was filed with reasonable promptness and there was no waiver.  The motion to disqualify is timely and should be considered on the merits.  See U.S. ex rel. Bumbury v. Med-Care Diabetic & Medical Supplies, Inc., 101 F. Supp. 3d 1268, 1273 (S.D. Fla. 2015) (citing Kobarid Holding, S.A. v. Reizen, Case No. 03-23269-CIV-Lenard, 2005 WL 1694069, *7 (S.D. Fla. July 19,

2005)(affirming the finding of a magistrate judge that a "seven-month delay [in filing the motion to disqualify] when very little progress had been made in this action" did not constitute a waiver).

### III. The Zarco Firm Should Be Disqualified

#### A. Irrebutable Presumption of Confidential Disclosures During Prior Representation of Mr. Dupoux

The Zarco firm concedes that it previously represented the defendant, Stephane Dupoux, in a prior action before this Court.  Opposition at 3 (Sealed) ("[The Zarco firm] made an appearance on behalf of Dupoux in the Gutierrez Lawsuit by filing a Motion to Set Aside the Clerk's Default and Motion to Dismiss."); (see *Jorge Gutierrez, et al. v. Seasalt and Pepper, LLC, et al.*, Case No. 14-22852-CV-UNGARO (S.D. Fla. 2014) (the "Gutierrez case"). The Zarco firm attempts to minimize its role in representing Dupoux by arguing that its "representation of Dupoux was required due to the indemnification clause in the Settlement Agreement."  Id.  The Zarco firm also argues that the River Yacht Club, a defendant in the present action, did not exist when it represented Mr. Dupoux in the *Gutierrez* case.

"Once the existence of an attorney-client relationship is established, an 'irrefutable presumption' arises that confidences were disclosed during the course of the relationship." In re Skyway Communications Holding Corp., 415 B.R. 859, 867 (M.D. Fla. 2009) (citations omitted).  Under Florida law, "upon showing there is an attorney-client relationship, there is a presumption there was a confidential relationship and confidential information was transferred to all members of the firm by the client." In re Weinhold, 380 B.R. 848, 853 (M.D. Fla. 2007) (citation and internal punctuation omitted).  While the Zarco firm maintains that it did not learn any confidences from Mr. Dupoux during its representation of him in the *Gutierrez* case, Mr. Dupoux maintains that he learned about the 207(i) exemption from the Zarco firm while it defended him in

10

the *Gutierrez* case and filed a motion to dismiss based on the 207(i) exemption. Mr. Dupoux is a former client of the Zarco firm who enjoys the protection of Florida Bar Rule 4-1.9. The undersigned finds that the defendants satisfy the first prong of the disqualification analysis by showing the existence of an attorney client relationship between the Zarco firm and Mr. Dupoux.

B. Substantially Related Matters

The second prong of the inquiry is whether the present action is substantially related to the Zarco firm's former representation of Mr. Dupoux in the *Gutierrez* case. Florida Bar Rule 4-1.9 governs a lawyer who has formerly represented a client in a matter. "Rule 4-1.9 is designed to protect client confidentiality and is 'aimed at the problem of attorneys "switching sides."'" Estright v. Bay Point Improvement Ass'n Inc., 921 So. 2d 810, 811 (Fla. 1st DCA 2006) (citation omitted).

An attorney may be disqualified when the attorney is adverse to its former client's affiliate. See Herrmann v. GutterGuard, Inc., 199 Fed. App'x 745, 756 (11th Cir. 2006). In Herrmann, the Eleventh Circuit found that "it does not matter ... that at the time F&P represented Dixie HomeCrafters, the company had not yet hired these particular plaintiffs or any gutter installation crews." Id. The Eleventh Circuit explained that "[i]f the officers and managers received advice and information from F&P about compliance with wage and hour law during the audit and review, that fact will become important in determining whether they acted willfully in failing to pay the plaintiffs overtime." Id. In Herrmann, the Eleventh Circuit held that "the district court did not err in determining that the prior and current matters were substantially related." Id.

The plaintiff argues that the restaurants are different and the sections of the

FLSA at issue in the lawsuits are different.  See Opposition at 8 (Sealed).  Mr. Dupoux had an ownership interest in both restaurants and is relying upon the 207(i) exemption under the FLSA as he did in the *Gutierrez* case.  The plaintiff's reliance on Smalley Transp. Co. v. Prime Computer, Inc., 137 F.R.D. 397, 399 (M.D. Fla. 1991) is misplaced.  In Smalley Transportation, the district court found that the plaintiff did not satisfy its burden of establishing that an action against one computer company was substantially similar to an against a different computer company for fraud, misrepresentation, breach of contractual warranties, rescission, revocation of acceptance, and federal and Florida RICO violations.  In Smalley Transportation, the attorney who was the subject of the disqualification motion testified that "the data processing involved with the Honeywell computer system was vastly different from data processing used by the current PRIME computer system due to technological advances, and that information gained about Smalley in the Honeywell case would not be helpful in the present case."  Id. at 400.  In Smalley Transportation, the district court denied the plaintiff's motion to disqualify on the ground that the "plaintiff has not presented any evidence that the incorporation of [general legal] theories [used in suing computer companies] into the Honeywell case was in any way related to the present case, beyond the general legal theories about computer fraud...."  Id. at 401.

Because the *Gutierrez* case and the present case involve almost identical allegations against restaurants in which Mr. Dupoux had or has an ownership interest and the very same defense of the 207(i) exemption, the cases are substantially related. The Zarco firm provided Mr. Dupoux with legal advice concerning the very subject upon which the Zarco firm is presently suing Mr. Dupoux, namely, representation involving an

12

alleged tip credit violation in an FLSA case and the utilization of a 207(i) exemption. The Zarco firm represented the Seasalt and Pepper restaurant in the *Gutierrez* case at a time when Mr. Dupoux had an ownership interest in the Seasalt and Pepper restaurant.

The Zarco firm's argument that River Yacht Club was not in existence at the time of the prior representation of Mr. Dupoux in the *Gutierrez* case ignores the fact that Mr. Dupoux was in existence and the legal advice that the Zarco firm provided to him regarding the 207(i) exemption regarding the Seasalt and Pepper restaurant in the *Gutierrez* case was subsequently utilized by Mr. Dupoux at the companies in which he has an ownership interest namely, the defendant, Food and Leverage, LLC, which manages the defendant, CG RYC, LLC d/b/a River Yacht Club. Dupoux Declaration at ¶¶ 4-5 (DE# 24-4).

The undersigned finds that the defendants satisfied the second prong because the matters are substantially related. Accordingly, the undersigned recommends that the motion to disqualify be granted and the Zarco firm be disqualified.

## RECOMMENDATION

For all of the foregoing reasons, the undersigned **RECOMMENDS** that the defendants' Motion to Disqualify Plaintiff's Counsel (DE# 24, 1/30/18) be GRANTED and that Roberto Zarco, Esq., Beshoy Rizk and the law firm of Zarco Einhorn Sakowski & Brito, P.A.. (the Zarco firm) be disqualified.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Ursula Ungaro, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District

Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

RESPECTFULLY SUBMITTED in Chambers, at the United States Courthouse, Miami, Florida this 14 day of March, 2018.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided:
United States District Judge Ungaro
All counsel on record